UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKY BRYANT,                    :
                                 :
          Petitioner,            :CIVIL ACTION NO. 3:06-CV-2082
                                 :
          v.                     :(JUDGE CONABOY)
                                 :
TROY WILLIAMSON, Warden,         :
                                 :
          Respondent.            :
                                 :

---

**MEMORANDUM**

Here we consider Petitioner Ricky Bryant's Petition for Writ
of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1).
Petitioner, a District of Columbia offender currently incarcerated
at the United States Penitentiary-Lewisburg ("USP-Lewisburg") in
Lewisburg, Pennsylvania, filed the action on October 23, 2006,
accompanied by a request to proceed *in forma pauperis* (Doc. 2) and
brief in support of the Petition (Doc. 3).  On October 25, 2006,
the Court directed service on Respondent (Doc. 5), and Respondent
filed his response on November 16, 2006, (Doc. 11-1).  Petitioner
filed a reply on December 21, 2006, (Doc. 12).[1]

---

[1]  Petitioner's document is titled "Petitioner Requests Leave
of this Honorable Court to Traverse Respondent's Response to the
Petition for Writ of Habeas Corpus Pursuant to Federal Rules of
Civil Procedure - Rule 15."  (Doc. 12.)  By December 5, 2006, Order
of Court, Petitioner was allowed fifteen (15) days from the filing
of Respondent's response to file a reply brief.  (Doc. 5.)
Respondent filed his response on November 16, 2006.  (Doc. 11-1.)
Because Petitioner's reply is obviously dated in error as it is
dated August 15, 2006, (Doc. 12 at 13) we will consider the filing
date to be December 15, 2006.  This date is past the fifteen days

1

In his Petition, Petitioner identifies five grounds on which he asserts he is being held unlawfully.  (Doc. 1.)  Each of the identified grounds relates to Petitioner's assertion the United States Parole Commission improperly applied amended parole guidelines to a District of Columbia offender in violation of the Ex Post Facto Clause of the United States Constitution.  As will be discussed below, because we find Petitioner has not met his burden of establishing an Ex Post Facto Clause violation, we will dismiss this Petition.

## I. Background

Petitioner is serving an aggregate term of thirty years to life for felony murder while armed, armed robbery and burglary - crimes committed in 1979 and 1980.  (Doc. 11-1 at 1, Ex. 1.)  He was convicted in the District of Columbia Superior Court (*id.*) and is within the jurisdiction of the United States Parole Commission ("Commission") pursuant to the National Capital Revitalization and Self-Government Act of 1997,[2] which transferred authority for D.C. Code offenders to the Commission and abolished the D.C. Parole Board.

Although Petitioner became eligible to be considered for

---

allowed by our Order, but we will accept it as Petitioner's reply brief.  (Because the document was docketed as a reply brief, it does not require court action to be accepted.)

[2]  Public Law No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (formerly 24-1231).

parole on June 30, 2002, the Commission did not conduct the initial parole hearing until July 3, 2003. (Doc. 11-1 at 2.)  The delay reportedly was due to difficulty obtaining a copy of Petitioner's pre-sentence report on his felony murder conviction. (*Id.* n.2.)

At the initial hearing, the Commission determined a parole guideline range under 28 C.F.R. § 2.80 which yielded an aggregate range of 394-446 months. (Doc. 11-1 at 2-3.)  Considering Petitioner's offenses of conviction, his two previous offenses (including forcible rape and armed robbery) and his nine disciplinary infractions he had committed while confined, the Commission determined Petitioner had a "base point score guideline range" of 72-96 months, to which was added 270-270 months (months required to be served to parole eligibility date), and 52-80 months (disciplinary guideline range). (Doc. 11-1 at 2-3; Ex. 2.)  The Commission denied parole and set a reconsideration hearing in July 2008 - a sixty-month set-off period. (Doc. 11-1 at 3.)

Petitioner filed this habeas action on October 23, 2006, asserting five grounds for relief. (Doc. 1.)  The following are the grounds identified: 1) the United States Parole Commission's guidelines are laws for purposes of parole as applied to District of Columbia offenders; 2) the United States Parole Commission improperly postponed Petitioner's parole eligibility/release date beyond the guideline range in violation of the Ex Post Facto Clause of the United States Constitution by relying on a 1987 amendment to

the Sentencing Reform Act ("SRA") which authorized upward departures not allowed when Petitioner committed his crimes in 1979-1980; 3) Petitioner was impermissibly disadvantaged by the Parole Commission's application of 1987 amendments to the SRA because the original § 235(b)(3) required that parole release dates be set within the guideline range; 4) the United States Parole Commission failed to follow the regulatory framework for parole decisions of the District of Columbia Board of Parole when it recalculated his eligibility to 394-446 months; and 5) the United States Parole Commission violated federal law and tainted Petitioner's initial parole eligibility hearing by using stale disciplinary reports to calculate his Total Point Score.  (Doc. 1.)

In his supporting brief, Petitioner supplements his Ground Four claim regarding the Commission's failure to follow the appropriate regulatory framework with the assertion that the Commission violated the Ex Post Facto clause when it determined that his next parole hearing would be sixty months from the July 2003 hearing, rather than the one year set-off customary under the D.C. guidelines.  (Doc. 3 at 5.)

In his reply brief, Petitioner makes the additional argument he is impermissibly disadvantaged because the federal parole regulations are primarily concerned with punishment where the District of Columbia's former regulations factored evidence of post incarceration rehabilitation into the parole determination.  (Doc.

4

12 at 6.)

Finally, Plaintiff avers the Commission is motivated to amend the guidelines in ways that disadvantage D.C. Code offenders because the viability of the Commission depends on extending D.C. Code offenders' sentences. (Doc. 3 at 8; Doc. 12 at 8.)

## II. Discussion

Petitioner's habeas petition is primarily based on his assertion that the Commission's application of various guidelines and a 1987 amendment to § 235(b)(3) of the Sentencing Reform Act violate the Ex Post Facto Clause of the United States Constitution because he is a District of Columbia code offender entitled to have allegedly less stringent D.C. guidelines applied to him regarding his eligibility for parole. (Docs. 1, 3, 12.)

### A.   *Ex Post Facto "Laws"*

Petitioner first argues the Commission's parole guidelines are Ex Post Facto laws for purposes of parole under the "old D.C. law." (Doc. 1 para. 9(a).)  For the reasons discussed below, we do not decide this issue, but will assume for the purpose of discussion that the guidelines are "laws" in the context of the analysis of whether a violation of the Ex Post Facto Clause has occurred in this case.

The Ex Post Facto Clause prohibits "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dep't of Corrections v. Morales*, 514

5

U.S. 499, 504 (1995).  Thus, the initial inquiry is whether the parole guidelines at issue here are "laws" for ex post facto purposes.

The guidelines in question were promulgated pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act") which gave the Commission the authority to make parole decisions for D.C. Code offenders.  *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998).  The decisions were to be governed by the rules of the D.C. Parole Board, but the Revitalization Act also gave the Commission the "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia."  Revitalization Act § 11231(a)(1).  Pursuant to this authority, the Commission developed its own guidelines for making parole decisions for D.C. Code offenders which are codified at 28 C.F.R. § 2.80.[3]

The Third Circuit Court of Appeals addressed the question of whether the Commission's guidelines were "laws" for ex post facto purposes in *U.S. ex rel. Forman v. McCall*, 709 F.2d 852 (3d Cir. 1983).[4]  *Forman* held that parole guidelines could constitute "laws"

---

[3] Guidelines adopted in 1998 and 2000 are at issue in this case as well as a 1987 amendment to the Sentencing Reform Act ("SRA").  (Doc. 3.)

[4] Although *Forman* addressed the Commission's guidelines in existence at the time and pre-dated the Commission's promulgation of guidelines applicable to District of Columbia Code offenders,

within the meaning of the Ex Post Facto Clause if they are applied without substantial flexibility.  *Id.* at 862.  The court further held that the substantial flexibility question - the manner in which the Commission applied its guidelines - was a question of fact to be determined by the district court: "the district court will be free to rely upon statistics, affidavits, testimony, and other evidentiary sources."  *Id.*

Here Petitioner urges us to consider the guidelines in question laws for ex post facto purposes.  (Doc. 3 at 3.) Respondent asserts statistical evidence demonstrates the Commission is applying the guidelines with substantial flexibility so they should not be considered laws.  (Doc. 11-1 at 12.)

Here the evidence of record is not sufficient to undertake the statistical evaluation required by *Forman*.  Rather than require Respondent to file additional submissions in support of his claim that the guidelines are not "laws" in the present context, for the sake of judicial efficiency we will assume *arguendo* the guidelines in question are laws for ex post facto purposes.

**B.    *Ex Post Facto Standard***

The two-prong test used to determine whether a law violates the Ex Post Facto Clause is whether it 1) involves a change in law

courts within the Third Circuit have concluded the *Forman* analysis applies to D.C. Code offender guidelines.  *See*, *e.g.*, *Hill v. Lamanna*, Civ. A. No. 03-160, 2006 WL 1851301, at *3 (W.D. Pa. July 3, 2006).

which has a retrospective effect and 2) whether the law creates a sufficient risk of increasing the measure of punishment attached to the covered crimes. *Richardson v. Pa. Board of Probation and Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005) (citing *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Calif. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). "[A] 'speculative or attenuated possibility . . . of increasing the measure of punishment' is not enough." *Richardson*, 423 F.3d at 288 (citing *Morales*, 514 U.S. at 509). The prisoner carries the ultimate burden of establishing that the measure of punishment itself has changed and the law, as applied to his own sentence, creates a significant risk of increasing his punishment. *Id.* (citing *Garner v. Jones*, 529 U.S. 244, 255 (2000), *Morales*, 514 U.S. at 510 n.6).

Respondent does not argue the guidelines were not applied to Petitioner retrospectively. Therefore, the question is whether Petitioner has shown the guidelines applied to him sufficiently increased the measure of his punishment.

To make this determination, we must first decide the comparators: we know from the record what guidelines the Commission employed in considering Petitioner's parole eligibility,[5] but to decide the second prong of the ex post facto inquiry we must look at which D.C. rules should be used as comparisons in the

---

[5] The Commission's guidelines which became effective December 4, 2000, codified at 28 C.F.R. § 2.80 (2001). *See* Doc. 11-1 at 6.

"sufficient increase in the measure of punishment" analysis.

"It is a fundamental principle of ex post facto jurisprudence that a court entertaining an ex post facto claim must focus upon the law in effect at the time of the offense for which a person is being punished." *U.S. ex rel. Forman v. McCall*, 709 F.2d 852, 856 (3d Cir. 1983) (citations omitted).  Other courts considering claims similar to Petitioner's, have determined the law in effect when the D.C. Code offender committed his crime is the focus of the inquiry, not the law in effect at the time the petitioner came under the Commission's authority with the passage of the Revitalization Act.  *See*, *e.g.*, *Brown v. Williamson*, No. 4:CV-06-851, 2006 WL 1896166 (M.D. Pa. July 7, 2006)

In this case, Petitioner committed his crimes in 1979 and 1980.  (*See*, *e.g.*, Doc. 11-1 at 3, Ex. 1.)  Thus, the comparison we must undertake is between the parole guidelines in effect in the District of Columbia in 1979 and 1980 and the guidelines applied to Petitioner at his parole hearing in 2003: if Petitioner has shown the guidelines applied by the Commission in 2003 created a sufficient risk of increasing the punishment for his crimes, then he makes out an Ex Post Facto Clause violation.

Before analyzing Petitioner's individual claims, we will set out the regulations in effect in 1979.[6]   The following regulations

---

[6]   The regulations set out in the text are derived from Respondent's response to the Petition (Doc. 11-1 at 20-21 n.8). Although in his reply Petitioner argues the 1987 D.C. guidelines he

addressing the granting of parole were reported in the 1982 copy of

Title 9 of the D.C. regulations.

> 105 GRANTING PAROLE - GENERAL
>
> > The granting of a parole is neither a
> > constitutional or statutory requirement,
> > and release to parole supervision by the
> > Board in not mandatory.
> >
> > The statutory criteria for parole notes
> > that:
> > > . . . Whenever it shall appear to
> > > the Board of Parole that there is a
> > > reasonable probability that a
> > > prisoner will live and remain at
> > > liberty without violating the law,
> > > that his release is not
> > > incompatible with the welfare of
> > > society, and that he has served the
> > > minimum sentence imposed or the
> > > prescribed portion of his sentence
> > > as the case may be, the Board may
> > > authorize his release on parole
> > > upon such terms and conditions as
> > > the Board shall from time to time
> > > prescribe . . .
> >
> > All Board decisions will be made by a
> > majority of the Members.
>
> 105.1 Factors considered
>
> > Among others, the Board takes into
> > account some of the following factors in
> > making its determination as to parole:
> >
> > (a) The offense, noting the nature of the
> > violation, mitigating or aggravating
> > circumstances and the activities and
> > adjustment of the offender following arrest

---

seeks to have applied to his case are "the only mandatory and
binding law annexed to his 1979 and crimes" (Doc. 12 at 40),
Petitioner does not indicate any disagreement with the regulations
as set out.

if on bond or in the community under any
presentence type arrangement.

(b) Prior history of criminality noting the
nature and pattern of any prior offenses as
they may relate to the current circumstances.

(c) Personal and social history of the
offender, including such factors as his
family situation, education development,
socialization, marital history, employment
history, use of leisure time and prior
military experience, if any.

(d) Physical and emotional health and/or
problems which may have played a role in the
individual's socialization process, and
efforts made to overcome any such problems.

(e) Institutional experience, including
information as to the offender's overall
general adjustment, his ability to handle
interpersonal relationships, his behavior
responses, his planning for himself, setting
meaningful goals in areas of academic
schooling, vocational education or training,
involvements in self-improvement activity and
therapy and his utilization of available
resources to overcome recognized problems.
Achievements in accomplishing goals and
efforts put forth in any involvements in
established programs to overcome problems are
carefully evaluated.

(f) Community resources available to assist
the offender with regard to his needs and
problems, which will supplement treatment and
training programs begun in the institution,
and be available to assist the offender to
further serve in his efforts to reintegrate
himself back into the community and within
his family unit as a productive useful
individual.

9 D.C.R.R. 105 and 105.1.

11

C. **Sentencing Reform Act**

Petitioner asserts two related claims regarding § 235(b)(3) of the Sentencing Reform Act of 1984. (Doc. 1 para. 9(b)-(c).) In Ground (b) of his Petition, Petitioner claims the Commission improperly postponed his parole eligibility/release date beyond the guideline range in violation of the Ex Post Facto Clause by relying on a 1987 amendment to the Sentencing Reform Act which authorized upward departures not allowed when Petitioner committed his crimes in 1979-1980. (Doc. 1 para. 9(b).) In Ground (c) Petitioner makes the almost identical claim that he was impermissibly disadvantaged by the Commission's application of 1987 amendments to the SRA because the original § 235(b)(3) required that parole release dates be set within the guideline range. (Doc. 1 para. 9(c).) We conclude Petitioner has not made the required showing regarding his Sentencing Reform Act claims.

The Sentencing Reform Act of 1984 ("SRA" "Act") abolished the United States Parole Commission and repealed federal parole statutes. *See*, *e.g.*, *D'Agostino v. Keohane*, 877 F.2d 1167, 1169 (3d Cir. 1989.) "Section 235(b)(3) of the Act was to be a phase-out or transition section intended to provide authority to the Commission to complete a final round of parole decisions prior to the expiration of its authority." *Id.* As originally passed § 235(b)(3) provided in pertinent part:

> The United States Parole Commission shall set
> a release date, for an individual who will be

12

> in its jurisdiction a day before the
> expiration of five years after the effective
> date of this Act, *that is within the*
> *guideline range that applies to the prisoner*
> *under the applicable parole guideline*.

(emphasis added.)  In 1987, the provision was amended and the
"within the guideline range" language was replaced with "pursuant
to Section 4206 of Title 18 U.S.C."  *D'Agostino*, 877 F.2d at 1173.
The significance of this change is that § 4206 allowed the
Commission to set release dates outside the guideline range for
"good cause."  *Id*.

It is the Commission's asserted application of this 1987
amendment which Petitioner claims violates the Ex Post Facto
Clause.

Respondent avers that none of the SRA's provisions apply to
Petitioner because he committed his crimes in 1979 and 1980 - long
before the SRA was promulgated.  (Doc. 11-1 at 21.)  Respondent
further argues the Commission's decision in Petitioner's case is
not outside the guideline range.  (*Id*. at 23.)

Petitioner argues his current parole eligibility date is
outside the guideline range because his original range with a 240
month minimum was changed to a 394 month minimum and 446 month
maximum at his July 2003 hearing.  (*See* Doc. 3 at 4.)

Respondent explains that this calculation was based on
consideration of Petitioner's offenses and the nine disciplinary
infractions he had committed while confined.  (Doc. 11-1 at 2.)

13

Respondent concludes that because Petitioner has served approximately 321 months, the Commission has not rendered a decision outside his guideline range.  (Doc. 11-1 at 23.)

We agree with Respondent that Plaintiff has not made out a claim under § 235(b)(3) of the SRA.  First, as set out by Respondent, Petitioner is a D.C. Code Offender who committed his crimes in 1979 and 1980 - several years before the SRA was promulgated and, therefore, the provisions of the Act do not apply to him.  (Doc. 11-1 at 21.)

Second, assuming *arguendo* the Act applies to him, it appears the Commission has not set a release date outside the guideline range because it factually has not done so and Petitioner has not been incarcerated beyond the applicable range.

Finally, again assuming the Sentencing Reform Act applies to Petitioner and further assuming *arguendo* the Commission has rendered a decision outside the guideline range, Petitioner's ex post facto claim regarding § 235(b)(3) fails.  The Third Circuit Court of Appeals held a federal prisoner was not disadvantaged by the application of the amended § 235(b)(3) because, "had § 235(b)(3) never been enacted as a transition statute, [the petitioner] would still have been subject to the dictates of 18 U.S.C. § 4206 and the provision permitted the Commission to set release dates outside the guideline range for 'good cause.'" *D'Agostino*, 877 F.2d at 1173.  Our case is distinguishable on the

14

fact that the petitioner in *D'Agostino* was a federal prisoner who would have been subject to § 4206 when he committed his crimes and Petitioner is a D.C. Code offender who would have been subject to D.C. parole practices in 1979-1980 when he committed his crimes. However, *D'Agostino* may be instructive for the proposition that application of the 1987 amendment is not prohibited where the parole provisions in effect at the time the petitioner committed his crime would have allowed for release dates outside the guideline range.  Here, Petitioner has made no showing that he would have been entitled to have a release date set within the guideline range under the D.C. regulations in effect when he committed his crimes in 1979 and 1980.  Therefore, Petitioner's claims relating to § 235(b)(3) must be dismissed.

**D.   *Application of Amended Parole Guidelines***

Petitioner contends the Commission's application of amended parole guidelines violated the Ex Post Facto Clause.  This general averment encompasses two specific claims that Petitioner was impermissibly disadvantaged: 1) he received a sixty month set-off date to his next parole hearing compared with the one year set-off customary under D.C. regulations (Doc. 3 at 5); and 2) the Commission's use of "stale" disciplinary reports wrongly increased his point score (Doc. 3 at 9).  For the reasons discussed below, we conclude Petitioner has failed to meet his burden of establishing an ex post facto violation on the asserted bases.

15

### 1.   Parole Rehearing Date

Petitioner asserts the Commission violated the Ex Post Facto Clause of the United States Constitution because under the 1987 D.C. Board of Parole Guidelines which should have been applied to his case, the "ordinary continuance to a [parole] rehearing would be one year" where the Commission set his rehearing at sixty (60) months.  (Doc. 3 at 5.)

First, we note Petitioner does not set out why the D.C. Board's 1987 regulations should apply to him.  He merely makes the conclusory statements that the D.C. Board of Parole Guidelines in effect from 1987 to 1998 are the guidelines he "wants applied to his case" (Doc. 3 at 5) and "the 1987 D.C. guidelines he seeks to have applied to his case are, in fact, the only mandatory and binding law annexed to his 1979 and 1980 crimes" (Doc. 12 at 4). As discussed above, an ex post facto analysis does not compare the law applied with the law of a petitioner's choice: we must compare the guidelines applied to Petitioner with those in effect at the time he committed his crimes, i.e., 1979 and 1980.  Because Petitioner does not compare the guidelines applied to him at his 2003 hearing with those in effect in 1979 and 1980, he has not satisfied his burden under *Garner*, *see supra* p. 8, and cannot prevail on this claim.

In addition to Petitioner's failure to satisfy his burden, his ex post facto claim regarding a sixty month set-off date also fails

16

regardless of the guidelines used as comparators.  Courts have routinely concluded the Commission does not violate the Ex Post Facto Clause when it sets a rehearing date different from what may have been set under ordinary circumstances pursuant to earlier guidelines - an entitlement to a shorter set-off period is speculative at best because the language in earlier guidelines was not mandatory.  *See*, *e.g.*, *Glascoe v. Bezy*, 421 F.3d 543, 548 (7th Cir. 2005); *Anderson-El v. U.S. Parole Comm'n*, No. 05 Civ. 2697, 2006 WL 2604723, at *8 (S.D.N.Y. Sept. 11, 2006); *Hill v. Lamanna*, Civ. A. No. 03-160, 2006 WL 1851301, at *5 (W.D. Pa. July 3, 2006).

### 2.   Commission's Use of Disciplinary Reports

Petitioner maintains the Commission's use of disciplinary reports based on prison infractions which occurred more than three years before his parole hearing violates 1991 D.C. guidelines and wrongly increased his point score thereby lengthening his period of incarceration.  (Doc. 3 at 9.)

The regulations pertinent to the Commission's consideration of disciplinary infractions in place at the time of Petitioner's 2003 parole eligibility hearing are found at 28 C.F.R. § 2.80. Subsection 2.80(d) provides "[t]he Commission shall assess whether the prisoner has been found guilty of committing significant disciplinary infractions while under confinement for the current offense."  Subsection 2.80(j) directs that the applicable guideline range for disciplinary infractions is to be determined from § 2.36

17

- the provision which addresses the guidelines applicable to the sanctioning of disciplinary infractions.

As set out by Petitioner, the 1991 D.C. guidelines described what should ordinarily be considered "negative institutional behavior at the initial parole eligibility hearing." (Doc. 3 at 10.) Pertinent to this case, Petitioner maintains his disciplinary infractions were of the type that should only have been considered if they had taken place up to a period of three years before the hearing. (*Id.*)

Respondent asserts that even if the 1991 guideline is considered a "law" for ex post facto purposes, it is not a law annexed to Petitioner's 1979 crime. (Doc. 11-1 at 24.) Therefore, Respondent concludes Petitioner has no legal basis for his claim that the Commission should have applied the 1991 guideline rather than the relevant regulations found at 28 C.F.R. §§ 2.80(d), (j). (*Id.*)

We conclude Petitioner has not satisfied his burden regarding this claim. First, he has provided no basis upon which we can conclude the 1991 guidelines apply to his case. As discussed above, the laws attached to his crimes are those in effect in 1979 and 1980 and Petitioner has no entitlement to application of later-adopted regulations.

Second, Petitioner's claim fails even if we undertake the comparison of the D.C. regulations in effect at the time he

18

committed his crimes and those applied to him in 2003.  As set out above, *see supra* pp. 10-11, the regulations in effect in 1979 and 1980 allowed for the consideration of institutional behavior with no limit on the time when the behavior took place.  9 D.C.R.R. 105.1(e).  Therefore, the Commission's consideration of disciplinary infractions occurring more than three years before the 2003 parole eligibility hearing did not create a sufficient risk of increased punishment compared with the 1979-1980 regulations.

### 3.   *Petitioner's Additional Claims*

Petitioner makes several general and/or conclusory assertions regarding the Commission's application of amended guidelines to his case.  We will now address them to the extent they may be construed as assertions in support of Petitioner's ex post facto claims.

#### a.   *Calculation Distinctions Between 1987 D.C. Guidelines and Commission's 2000 Guidelines*

Petitioner makes the following general statement:

> The "Old" D.C. parole guidelines ["1987
> D.C. guidelines"] employed a salient factor
> score virtually identical to that contained
> in the federal guidelines . . .  However, the
> "Old" D.C. guidelines did not contain an
> offense severity dimension, nor did they
> prescribe ranges of months to be served.
> Rather, the "Old" D.C. guidelines used the
> minimum term of the sentence (less good time)
> as the basic measure of accountability for
> the offense, and applied a point score system
> which included the salient factor score and
> other readily available and/or ascertainable
> items to determine whether or not the
> prisoner was suitable for parole upon the
> completion of the minimum term.

(Doc. 12 at 4.)

As discussed above, Petitioner assumes he is entitled to application of the 1987 D.C. guidelines.  We have refuted this assertion and, therefore, any ex post facto claim based on entitlement to application of the 1987 D.C. guidelines is without merit.  Additionally, even if Petitioner's date of conviction entitled him to application of the 1987 guidelines, courts have routinely rejected ex post facto claims which compare those guidelines to those employed by the Commission at Petitioner's 2003 parole eligibility hearing.  *See*, *e.g.*, *Anderson-El v. United States Parole Comm'n*, No. 5 Civ. 2697, 2006 WL 2604723, at *7-8 (S.D.N.Y. Sept. 11, 2006); *Brown v. Williamson*, No. 4:CV-060851, 2006 WL 1896166, at *2 (M.D. Pa. July 7, 2006); *Terry v. Reilly*, No. Civ. A. 1:04CV27, 2006 WL 1133888 (N.D. W. Va.  Apr. 26, 2006); *McKissock v. United States Parole Comm'n*, 295 F. Supp. 2d 643, 648-49 (S.D. W. Va. 2003).

b.  *Guidelines' Focus*

In his reply, Petitioner asserts that "the federal parole regulations, unlike the Board's former regulations are primarily concerned with punishment . . . and do not factor evidence of post incarceration rehabilitation into parole determinations."  (Doc. 12 at 6.)  Petitioner concludes "[t]his vital difference . . . creates a significant risk that he will linger in prison for longer than he reasonably assumed when he was given his original

sentence."  (*Id.*)

We conclude this argument is without merit.  The Third Circuit Court of Appeals has stated "the new federal regulations adopted by the Commission [pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997] *mirrored the rehabilitative focus of the Board's former regulations covering parole."  Fletcher v. Reilly*, 433 F.3d 867, 869 (3d Cir. 2006) (emphasis added).[7]  Additionally, the Commission's parole calculation clearly considers evidence of post-incarceration rehabilitation.  (*See* Doc. 11, Exs. 2, 3.)

   *c.   Purpose of Guideline Amendments*

Finally, Petitioner contends the Commission's revisions of the D.C. Board's regulations, effective August 5, 1998, and December 4, 2000, (dealing with risk factors considered in the parole determination and different rehearing standards) have limited the discretion found in the D.C. parole statute and have been undertaken to insure the Commission's viability.  (Doc. 3 at 8.) Because this assertion is conclusory and states no ex post facto

---

[7]   The *Fletcher* court's statement was made in the context of distinguishing between the regulations concerning parole and reparole.  *Fletcher*, 433 F.3d at 869.  The court also stated the Commission did not adopt the Board's regulations with regard to *reparole.   Id.*  The court concluded that because the federal regulations employed by the Commission in the case of reparole consideration did not factor post-incarceration rehabilitation, as would have been the case under the former D.C. regulations, the petitioner's allegations were sufficient to state a prima facie ex post facto claim.  *Id.* at 878.  Because here Petitioner is seeking parole, not reparole, any reliance on *Fletcher* is misplaced.

claim, no analysis is necessary.

### III. Conclusion

For the reasons set out above, we conclude Petitioner has not satisfied his burden of establishing that the United States Parole Commission violated the Ex Post Facto Clause of the United States Constitution in applying amended parole guidelines at his 2003 parole eligibility hearing.  Petitioner has presented no basis upon which to grant his habeas petition and, therefore, this action is dismissed.  An appropriate Order follows.


S/Richard P. Conaboy
                    RICHARD P. CONABOY
                    United States District Judge


DATED: January 25, 2007

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKY BRYANT,                          :
                                       :
        Petitioner,          :CIVIL ACTION NO. 3:06-CV-2082
                                       :
        v.                   :(JUDGE CONABOY)
                                       :
TROY WILLIAMSON, Warden,               :
                                       :
        Respondent.          :
                                       :

_____

### ORDER

AND NOW, THIS 25th DAY OF JANUARY 2007, FOR THE REASONS
DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED
THAT:

        1.   Petitioner's 28 U.S.C. § 2241 action is DISMISSED;

        2.   Petitioner's Request to Proceed In Forma Pauperis (Doc.
             2) is GRANTED;

        2.   There is no basis for the issuance of a certificate of
             appealability;

        3.   The Clerk of Court is directed to close this case.

                        S/Richard P. Conaboy
                        RICHARD P. CONABOY
                        United States District Judge

23